**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| JACK HENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-CV-68-HEA |
| ) | |
| BILL STANGE, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

This is a prisoner civil rights action in which the plaintiff, a Missouri State prisoner named Jack Henson (hereafter "plaintiff"), unfortunately passed away after filing a complaint seeking relief pursuant to 42 U.S.C. § 1983. Before the Court conducted the review required by 28 U.S.C. § 1915(e)(2)(B), plaintiff's parents filed a motion in which they could be understood to seek leave to prosecute this action on his behalf. For the following reasons, this action will be dismissed, without prejudice, and the pending motions will be denied.

**Background**

On May 23, 2022, plaintiff Jack Henson initiated this action by filing a Prisoner Civil Rights Complaint seeking relief under 42 U.S.C. § 1983, and filed a motion seeking leave to proceed *in forma pauperis*. At the time he filed the complaint, Plaintiff was a Missouri State prisoner who resided at the Southeast Correctional Center ("SECC"). Plaintiff prepared the complaint using a Court-provided Prisoner Civil Rights Complaint form. He identified the following five prison officials as defendants: Warden Bill Stange, Case Manager Charles Reed, Case Manager Wesley Fluharty, Superintendent Cybelle Webber, and Investigator Shawn Burch. He identified Stange, Reed, and Fluharty as prison officials at the SECC, and he identified

Webber and Burch as prison officials at the Ozark Correctional Center ("OCC"), the facility where Plaintiff previously resided.

Plaintiff sued Reed, Fluharty and Burch in an individual and official capacity, and he sued Webber in her official capacity only. He did not specify the capacity in which he sued Stange.[1] The complaint contained no allegations that plaintiff was ill, was being denied medical treatment, or that he faced any risk of harm. Instead, as set forth more fully below, plaintiff claimed Burch wrongfully searched his prison cell and field tested greeting cards, and determined they contained cannabinoid. Plaintiff was placed in administrative segregation, and he grieved the matter by filing Informal Resolution Requests ("IRRs"). Unspecified prison officials failed to timely respond to plaintiff's IRRs, until plaintiff finally received an unsatisfactory response from a non-party prison official. Plaintiff stated his right to due process was violated, and he was subjected to harassment, retaliation, and cruel and unusual punishment. However, he alleged no facts that could be construed as forming the basis of such claims. As explained below, the complaint was subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

Before this Court could review the complaint in accordance with § 1915, one Cynthia Kimmel and one Jack Henson filed a *pro se* motion in which they identified themselves as plaintiff's parents, advised the Court that plaintiff had died, and requested leave to act as "intervenors/next of ken [*sic*]." (ECF No. 3 at 1/filed June 23, 2022). Kimmel and Henson averred that once their requested relief was granted, they would "take up and modify previously filed action on behalf of Plaintiff" in order to "proceed under a class action suit from the additional events that occurred after the original petition was mailed to this Court." *Id.* Kimmel and Henson characterized plaintiff's complaint as setting forth claims of "retaliation, deliberate

---

[1] The Court therefore presumes that plaintiff sued Stange only in his official capacity. *See Baker v. Chisom,* 501 F.3d 920, 923 (8th Cir. 2007) (quotation omitted) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity").

indifference, harassment, abuse of discretion, mental duress/anguish, eigth [*sic*] amendment violation of cruel and unusual punishment, and a liberty interest violation of being unlawfully restrained and placed in administrative segregation w/o necessity of having lawful recourse to challenge the causes of unjust enrichment confinement." *Id.* at 2-3.  They did not explain the basis for their belief that the complaint set forth those claims.  Shortly after filing the motion, Kimmel and Henson filed a motion titled: "Motion to Expedite Entry of Order's [*sic*], and Judgment" in which they urged this Court to quickly rule their motion.  (ECF No. 5).

## Discussion

Rule 17(a) of the Federal Rules of Civil Procedure provides that an "action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  "The real party in interest is a party who, under governing substantive law, possesses the rights to be enforced." *Consul Gen. of Republic of Indonesia v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir. 2003). The purpose of Rule 17(a) "is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010). As such, the party bringing an action must actually possess, under the substantive law, the right sought to be enforced. *United HealthCare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 569 (8th Cir. 1996).

When a plaintiff dies, the proper person may file a motion for substitution pursuant to Rule 25 in order to seek to continue the prosecution of the action on the plaintiff's behalf.  Fed. R. Civ. P. 25.  "Thus, when reading Rule 25(b) in conjunction with Rule 17(a)'s requirement that an action must be prosecuted by the real party in interest, the court has no power to permit such

3

an action to continue without the real party in interest unless a motion for substitution is brought under Rule 25(b)." *Kuelbs v. Hill*, 615 F.3d 1037, 1042 (8th Cir. 2010).

Even if the Court liberally construed Kimmel and Henson's motion as one for substitution brought under Rule 25(b), the Court could not grant it. While Kimmel and Henson identify themselves as plaintiff's parents, their motion contains nothing from which the Court can conclude that either Kimmel or Henson is the real party in interest as described above. Even if Kimmel or Henson was identified as plaintiff's estate administrator, the Court could not grant the motion. While 28 U.S.C. § 1654 permits a party to plead and conduct his or her own case personally, non-attorney estate administrators are prohibited from proceeding *pro se* when the estate has other beneficiaries or creditors. *See Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005) (citations omitted). Here, neither of Kimmel and Henson's motions contain information identifying or quantifying the beneficiaries and/or creditors of plaintiff's estate. Neither Kimmel nor Henson may engage in the practice of law on behalf of others. *See id.* The Court is therefore unable to grant Kimmel and Henson's motion seeking to prosecute this action on plaintiff's behalf. It would be futile to give Kimmel and Henson the opportunity to remedy the foregoing because, even if the motion were granted, plaintiff's complaint contains no cognizable claims that Kimmel and/or Henson could prosecute on his behalf.

This Court is required to review a complaint filed *in forma pauperis*, and must dismiss it if, *inter alia*, it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff "pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S at 556).

The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555). This Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, even *pro se* complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

In the complaint, plaintiff indicated that he was transferred to the OCC to "get quarantined for Covid." (ECF No. 1 at 6). He alleged that while there, Burch violated his rights by searching his cell, field testing four greeting cards, and determining they contained cannabinoid. Plaintiff stated he was wrongfully placed in administrative segregation, and he complained that a crime lab report was not generated. He grieved the matter by filing IRRs, but "never received a response from the officials of the Ozark Correctional Center." *Id.* at 3, 5. Plaintiff alleged he was transferred to SECC, and placed in administrative segregation. Plaintiff alleged no facts about the circumstances of his transfer, nor did he attempt to allege it was retaliatory. He stated he was denied the IRR process, but alleged nothing that could be construed as claiming a denial of access to the grievance procedure. Instead, plaintiff's claim was clearly premised upon prison officials' failure to timely respond to the IRRs he filed. Plaintiff also claimed that a non-party prison official ultimately responded to his IRRs but told him he failed to exhaust the grievance process, which was "totally dishonest as plaintiff has a record of all of the IRRs he has filed." *Id.*

5

Plaintiff claimed he was subjected to "harassment, mental anguish and retaliation," and was prejudiced and suffered a detriment because of it. *Id.* He identified his injuries as: "Emotional, mental anguish and duress. Cruel and usual punishment. Unlawful ad seg confinement as a prisoner." *Id.* He stated that his substantive and procedural due process rights were violated. He claimed that "[a]ll of these officials" abused their authority. *Id.* at 6. For his prayer for relief, Plaintiff wrote:

> I want the court to issue a permanent injunction in this case, and temporary restraining orders upon SECC officers and give damages to plaintiff for mental/emotional duress, violation of liberty interest. Place plaintiff in [L]icking Corr. Center.

*Id.* at 8.

Plaintiff's death moots his claims for the injunctive relief of transfer to a different facility, and his complaint specified no other form of injunctive or equitable relief. Therefore, what is left are plaintiff's claims for an unspecified amount of damages against the five defendants.

The official-capacity claims for damages against these defendants are subject to dismissal. A suit against a public official in his or her official capacity is actually a suit against the entity for which the official is an agent. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). According to the complaint, the defendants are all employed by the MDOC, a state agency. *See Walker v. Mo. Dep't of Corr.*, 213 F.3d 1035, 1036 (8th Cir. 2000) (recognizing the MDOC as state agency). The Eleventh Amendment prohibits suits for damages against the state, agencies of the state, or state officials acting in their official capacities. *Nix v. Norman*, 879 F.2d 429, 432-33 (8th Cir. 1984). Additionally, "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."

6

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, plaintiff's official-capacity claims against Reed, Fluharty and Burch are subject to dismissal, and because plaintiff sued Webber and Stange in only their official capacities, they would be dismissed entirely from this action.

The Court now addresses whether the complaint states any valid individual-capacity claims against Reed, Fluharty, and Burch, and would state such claims against Webber and Stange had plaintiff sued them in an individual capacity.  Plaintiff claimed that Burch was liable to him because he searched his cell, field tested four greeting cards, and determined they contained cannabinoid.  There are no allegations permitting the inference that Burch did any of those things in retaliation for plaintiff's exercise of a constitutional right, or for any other impermissible reason.  The mere search of an inmate's cell, without more, is not a constitutional violation.  *See Hudson v. Palmer*, 468 U.S. 517, 529-30 (1984).  Additionally, to the extent plaintiff claims Burch falsely accused him of cannabinoid possession, such allegations, standing alone, do not state a claim of constitutional dimension.  *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989).

Plaintiff also stated that his due process rights were violated.  A procedural due process claim "is cognizable only if there is a recognized liberty or property interest at stake," and courts "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest."  *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (internal citations omitted).  The Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *see also Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003).  Therefore,

the question of what process was due is reached only if plaintiff's allegations demonstrated that his placement in administrative segregation created an atypical and significant hardship under *Sandin*. *See Beaulieu,* 690 F.3d at 1047.

In order to demonstrate that his liberty interest was curtailed by placement in administrative segregation, a plaintiff must show that the segregation "created an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002). Here, however, plaintiff alleged no facts about the conditions of his confinement in administrative segregation, much less facts permitting the inference that plaintiff was subjected to an atypical and significant hardship under *Sandin.* Instead, it appears plaintiff premised his claim upon the simple fact he was placed in administrative segregation.

Simply being placed in administrative segregation is not, in and of itself, an atypical and significant hardship under *Sandin*. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). That is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847. Also, plaintiff made no attempt to demonstrate that he was held in administrative segregation for a length of time that could be considered atypical and significant. *See Kennedy v. Blankenship*, 100 F.3d 640, 641-42 (8th Cir. 1996) (30 days in punitive isolation was not atypical and significant); *Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (nine months in disciplinary segregation was not atypical

and significant). Because plaintiff did not demonstrate that his placement in administrative segregation curtailed his protected liberty interest, he failed to state a cognizable due process claim. *See Beaulieu*, 690 F.3d at 1047 (a due process claim is cognizable only if the plaintiff identifies a constitutionally-protected liberty or property interest).

Even if plaintiff had established that he was subjected to an atypical and significant hardship under *Sandin*, his allegations would not state a cognizable due process claim. "Due process is flexible and calls for such procedural protections as the particular situation demands," but its fundamental requirement is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333-34 (1976) (internal quotations and alteration omitted). The Supreme Court has held that, in prison discipline cases, the requirements of due process are satisfied if "some evidence" supports the prison disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

In the complaint, plaintiff simply stated he was denied due process without alleging facts in support of his claim. He did not allege he was denied a hearing or any other opportunity to be heard. Instead, he premised his claim upon his belief that Burch's field test was incorrect and/or insufficient to support the conclusion that he violated a rule. However, a correction officer's description of events has been found to constitute some evidence upon which a prison disciplinary committee could determine that an inmate violated a prison rule. *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994). There are simply no other facts that would state a plausible due process claim. Although plaintiff was not required to allege facts in painstaking detail, he was required to allege sufficient facts to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

9

Next, plaintiff claimed that prison officials failed to timely respond to his IRRs. Plaintiff did not allege that any defendant or other prison official prevented him from filing IRRs or otherwise using the prison's grievance procedure, only that he did not receive timely responses to the IRRs he filed. Plaintiff's allegations fail to state a cognizable claim for relief. There is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a prison official's failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate). Additionally, it is well established that there is no federal constitutional liberty interest in having prison officials follow prison regulations. *Phillips*, 320 F.3d at 847 (citing *Kennedy*, 100 F.3d at 643).

Plaintiff also stated he was transferred from the OCC to the SECC, and he stated without support that he was subjected to retaliation by unspecified persons. Also, as relief, he sought transfer to a different facility. Indeed, a prisoner cannot be transferred in retaliation for the exercise of a constitutional right. *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). Here, however, plaintiff simply stated he was transferred without attempting to show that such transfer was retaliatory. A prisoner "enjoys no constitutional right to remain in a particular institution," *Murphy v. Missouri Dept. of Correction*, 769 F.2d 502, 503 (8th Cir. 1985), and prison officials generally may "transfer a prisoner for whatever reason or for no reason at all." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Similarly, plaintiff stated, in a conclusory manner, that unidentified persons subjected him to harassment, retaliation, cruel and unusual punishment, and due process violations.

10

However, plaintiff provided no factual support or enhancement for such statements. Without a factual underpinning, plaintiff's allegations amount to legal conclusions that are not entitled to the presumption of truth. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (stating that while "court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

Additionally, in setting forth his claims, plaintiff most often referenced the defendants generally and stated his rights were violated, instead of alleging facts explaining how each defendant was personally involved in, or directly responsible for, any act or omission that violated his federally-protected rights. That is insufficient. *See Martin v. Sargent*, 780 F.2d 1334 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege the personal responsibility of defendant). Plaintiff also appeared to proceed against the supervisory defendants on a theory of *respondeat superior.* However, such claims are not cognizable in this action. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (*respondeat superior* theory inapplicable in § 1983 cases).

In sum, plaintiff's complaint contains no allegations that would state a cognizable claim for relief, and it is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). There are therefore no claims that Kimmel and/or Henson could prosecute on plaintiff's behalf. Kimmel and Henson state they wish to "take up and modify" plaintiff's complaint, but they state they wish to do so in order to "proceed under a class action suit from the additional events that occurred after the original petition was mailed to this Court." (ECF No. 3 at 1). As *pro se* litigants, however, Kimmel and Henson cannot maintain a class action. They are not licensed attorneys, and therefore may not represent the interests of others.

For the foregoing reasons, the Court will deny plaintiff's motion for leave to proceed *in forma pauperis* and dismiss this action without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court will also deny Kimmel and Henson's motion to act as "intervenors," and will deny as moot their motion to expedite.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Jack Henson's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that Cynthia Kimmel and Jack Henson's motion (ECF No. 3) is **DENIED.**

**IT IS FURTHER ORDERED** that Cynthia Kimmel and Jack Henson's motion to expedite (ECF No. 5) is **DENIED** as moot.

Dated this 26th day of July, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE